UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN PARMAR, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAFEWAY INC.,<br><br>Defendant. | CASE NO. C10-421 MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Safeway Inc.'s motion for summary judgment. (Dkt. No. 41.) Having reviewed the motion, the response (Dkt. No. 67), the reply (Dkt. No. 82), and all related papers, the Court GRANTS summary judgment in favor of Safeway and DISMISSES Plaintiff's claims with prejudice. The Court finds this matter suitable for decision without oral argument.

**Background**

Plaintiff Susan Parmar pursues claims under the Fair Labor Standards Act and Washington's Minimum Wage Act against Safeway, for whom she worked as a Pharmacy

1  Manager in Seattle from June 2008 until August 2009.  Parmar argues that she was denied

2  overtime wages required by Federal and State law, as well as meal and rest breaks under State

3  law.

4       At the time she began her job with Safeway, Parmar believed she would be paid as a

5  salaried employee.  Parmar testified that she understood she was to be paid as a "Salaried Full-

6  time Pharmacist" and "receive[] the same salary every week without regard to the actual number

7  of hours worked." (Parmar Dep. at 187.)  She believed she "was going to make $52.75 an hour,"

8  and "get paid for 40 hours every week." (Id. at 51, 193.)  Parmar stated that her salary was paid

9  through an auto-pay system, meaning that if she did not turn in a time sheet, she was

10  automatically paid for forty hours of work. (Id. at 52:12-53:7, 195.)  This was different from

11  other pharmacy employees who had to "punch a clock." (Id. at 53.)  Parmar was also paid a

12  signing bonus when she was hired and a discretionary annual bonus. (Id. at 53-54.)

13       The record shows that Parmar often made more than her predetermined salary when she

14  worked more than forty hours per week.  As was Safeway's policy, she was paid a special rate of

15  hours worked beyond the forty a week hours.  She was paid either a "Pharmacy Exception

16  Curre" at $53.50 an hour (which went up to $54.50) or a "4th Premium" at $23.00 an hour.

17  (Parmar Decl. ¶ 6; Dkt. No. 25-2.)  The policies on pharmacist pay in effect during Parmar's

18  employment permitted payment of "premium pay" to salaried employees.  The 2005 "Pharmacist

19  Pay and Time Off Policy" stated that exempt full-time Pharmacy Managers and Staff

20  Pharmacists were salaried, but that premium pay was available to "all salaried/exempt

21  pharmacists employees in the specified geographic region." (Dkt. No. 43-1 at 48-50.)  The

22  policy stated that "[t]he company often needs pharmacists to work more than their assigned

23  schedules due to staffing shortages and emergency time off requests.  By providing an additional

24

1 pay incentive to motivate pharmacists to work on their days off, it will reduce the need for the
2 use of outside staffing services." (Id. at 49.)  Safeway updated its policies effective July 2009,
3 which allowed premium pay to be made to salaried pharmacists as before. (Dkt. No. 43-1 at 57;
4 Worthy Decl. ¶ 9.)

5 Except for six weekly pay periods, Parmar received pay for forty hours or more of her
6 predetermined annual salary (monetized per hour) each week during her fifteen months of
7 employment with Safeway. For those six pay periods, Parmar reported either sick leave, leave
8 without pay (voluntary or for disciplinary reasons), or vacation time. (Huggins Decl. ¶ 12; 42-1
9 at 14, 18-19, 23, 27, 29, 31-32, 34.) Safeway's general sick pay policy made clear that "'[s]ick
10 pay' hours are not considered 'hours worked' and are not counted when determining payment of
11 daily or weekly overtime." (Dkt. No. 43-1 at 45.) Safeway's sick leave policy specific to
12 pharmacists that applied for all but three months of Parmar's employment provided: "[i]f a
13 salaried/exempt employee with sick pay benefits must leave work after a shift has begun because
14 of illness, injury, or disability . . . the employee is paid regular hours for the full shift." (Dkt. No.
15 43-1 at 49.) The Director of Pharmacy Operations for Safeway's Seattle Divisions states that the
16 policy up until June 2009 was that sick and vacation pay could only be used in full-day, eight-
17 hour increments. (Worthy Decl. ¶ 9.) This is distinct from "hourly employees" who were
18 allowed to "utilize available sick pay benefits on an hourly basis." (Id.) The revised policy
19 effective July 2009 made a slight change in that a salaried/exempt employees would received
20 paid regular hours for the full day of sick leave taken, but that "[a] day may be equivalent to the
21 shift for the day, which could be 6 hours, 8 hours, 10 hours or any other assigned schedule."
22 (Dkt. No. 43-1 at 56.) The policy made clear that "NO PARTIAL SICK DAYS ARE

1  PERMITTED UNDER ANY CIRCUSTMANCES," with one exception that is not relevant.

2  (Dkt. No. 43-1 at 56.)

3        The records show that Parmar took sick pay in full-day, eight-hour increments.  During

4  the pay period for December 7 to 13, 2008, she took sixteen hours of sick pay, for which she was

5  paid at her normal salary wages.  (Dkt. No. 25-2 at 28.)  She took eight hours of sick pay during

6  the week of January 18 to 24, 2009, and was paid her predetermined salary wages for that time.

7  (Id. at 34.)  The same is true for the week of March 1 to 7, 2009, although she was only paid

8  twenty-eight hours of regular salary time, leaving her only thirty-six hours total for the week.

9  (Id. at 38.)  Parmar took eight hours of sick leave during the weeks of April 5 to 11, 2009, April

10  19 to 25, 2009, and May 31 to June 6, 2009, and was paid her normal salary wage.  (Id. at 43, 45,

11  4.)  For the week of May 17 to 23, 2009, Parmar took eight hours of paid sick leave, yet received

12  only twenty-eight hours of normal pay.  (Id. at 48, 50.)  Lastly, she took twenty hours of fully-

13  paid sick leave for the week of August 1 to 6, 2009.  (Dkt. No. 25-2 at 61.)

14        The pharmacy policy also explained that disciplinary actions could result in unpaid

15  suspensions: "Disciplinary unpaid suspensions for violations of company policies or rules may

16  be imposed on salaried/exempt pharmacists in full day increments in accordance with the regular

17  disciplinary process." (Dkt. No. 43-1 at 49.)  The 2009 policy stated that "[d]isciplinary unpaid

18  suspensions for violations of company policies or rules may be imposed on salaried/exempt

19  pharmacists in full day increments, in accordance with the regular disciplinary process." (Dkt.

20  No. 43-1 at 57.)  During the week of January 17, 2009, Parmar was suspended for three days

21  because a pharmacy technician working in Parmar's pharmacy gave a customer a prescription

22  without having it checked with the pharmacist, and Parmar failed to promptly notify the

23  customer of the potentially incorrect prescription when she learned of the problem.  (Parmar

24

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 4

1  Dep. at 103-05, 110.)  Parmar was not working at the time of the incident.  However, her

2  supervisor did not believe she acted with proper promptness to contact the customer after she

3  was learned of the technician's actions.  Parmar admitted that checking that the patient receives

4  the correct medication is important for the patient's safety and that the law requires such review.

5  (Parmar Dep. at 104, 110.)  During the week of her suspension, she took eight hours of paid sick

6  leave and twelve hours of regular pay.

7       Parmar also took vacation time during her employment.  The general vacation policy for

8  all Safeway employees was that the "vacation pay will be computed based on the straight time

9  hourly rate in effect at the time of the vacation." (Dkt. No. 43-1 at 38.)  The policy made clear

10  that "'[v]acation pay' hours are not considered 'hours worked' and are not counted when

11  determining the payment of daily or weekly income." (Id.)  The pharmacy division's policy had

12  no specific provision for how to calculate vacation time.  It did provide that vacation time could

13  be taken as pay in lieu of time off, but that "vacation must be paid out in 40-hour increments."

14  (Dkt. No. 43-1 at 49.)  The pre-July 2009 policy did not specify what increments of vacation pay

15  one could take, although it was Safeway's practice to allow only eight-hour increments.  (Worthy

16  Decl. ¶ 9.)  The July 2009 policy stated that "[a] salaried/exempt pharmacist who is taking

17  vacation will be paid based on shift worked as vacation day increments.  A day may be

18  equivalent to the shift for the day, which could be 6 hours, 8 hours, 10 hours or any other

19  assigned schedule." (Dkt. No. 43-1 at 56.)

20       Safeway has moved for summary judgment on Parmar's federal and state law claims.

21  Parmar has also moved for class certification and certification of a collective action.  (Dkt. Nos.

22  45, 47.)  Given the Court's ruling on Defendant's summary judgment motion, the Court finds

23  both class certification motions MOOT and does not address their merits.

24

**Analysis**

A. <u>Standard</u>

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The underlying facts are viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

B. <u>Fair Labor Standards Act Claim Fails</u>

Safeway moves to dismiss Parmar's FLSA claim on the theory that there is no evidence that Parmar was an hourly employee and that she is therefore not owed any overtime compensation. The Court agrees.

The FLSA requires that employers ordinarily pay their employees time-and-a-half for work exceeding forty hours per work week. 29 U.S.C. § 207(a)(1). The FLSA exempts bona fide employees (known as "exempt employees") from the Act's the requirement that the individuals be paid overtime. 29 U.S.C. § 213(a)(1). Exempt employs include executive, administrative and professional employees. A court facing a challenge such as Parmar's first

determines whether the employee satisfies the duty requirements of an exempt employee and then examines whether the employee was actually paid a salary (the "salary basis test"). See Webster v. Pub. Sch. Employees of Wash., Inc., 247 F.3d 910, 914 (9th Cir. 2001). Parmar concedes that her position at Safeway satisfied the "duties" test—that is, she is an exempt professional employee. (Dkt. No. 67 at 11.) However, Parmar contests vigorously whether she was paid on a salary basis.

The FLSA requires that an exempt employee be paid on a "salary basis." 29 C.F.R. § 541.100, -.200, -.300. An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." Donovan v. Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983) (per curiam). An employee is paid on "salary basis," where: (1) "the employee regularly receives each pay period on a weekly, or less frequent basis," (2) "a predetermined amount constituting all or part of the employee's compensation," and (3) the amount "is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602. Further, "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." Id. However, exceptions to this rule permit the employer to alter the periodic payments based on certain events.

As relevant to this litigation, an employer may make deductions to salaried employee's wages without converting her to an hourly employee for four reasons. First, the employer may deduct amounts for full day absences for personal reasons. 29 C.F.R. § 541.602(b)(1). Second the employer may make a deduction for full-day absences due to sickness if the deduction is made pursuant to a bona fide sick leave policy or practice. 29 C.F.R. § 541.602(b)(2). Third, the employer may make deductions for full-day absences (a) "for penalties imposed in good faith for

infractions of safety rules of major significance," or (b) "for infractions of workplace conduct

rules." 29 C.F.R. § 541.602(b)(4), (b)(5). Fourth, the employer may make deductions for days

not worked during the initial and terminal weeks of employment. 29 C.F.R. § 541.602(b)(6).

### 1. Pay Scales

Parmar attacks Safeway's use of varying pay scales as evidence that she was not a salaried employee. This attack is without merit.

The FLSA regulations state that an employer "may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salaried basis." 29 C.F.R. § 541.604(a).

Here, if Parmar worked more than forty hours a week, she was paid an hourly rate of $23 for every hour worked beyond forty hours. For example, if she worked forty-six hours, she would receive an extra six hours at a rate of $23 per hour. This is known as "4th Premium" pay under Safeway's pay system. Parmar also received pay under the title "Pharmacy Exception Curre," which was paid out at her full normal hourly rate. These two rates alone do not show that she was paid on an hourly basis. These payments were "additional compensation" made beyond the minimum weekly amount required of her salary and comply with 29 C.F.R. § 541.604(a). This is not a basis on which to dismiss the motion for summary judgment.

### 2. Deductions From Parmar's Salary Do Not Destroy Her Salaried Basis

In its motion for summary judgment, Safeway highlights six instances when Parmar received fewer than 40 hours of regular pay and explains how each deduction is permissible under the FLSA without converting Parmar to an hourly worker. Parmar appears to concede that the deductions were proper under the Department of Labor regulations in every instance except

infractions of safety rules of major significance," or (b) "for infractions of workplace conduct rules." 29 C.F.R. § 541.602(b)(4), (b)(5). Fourth, the employer may make deductions for days not worked during the initial and terminal weeks of employment. 29 C.F.R. § 541.602(b)(6).

### 1. Pay Scales

Parmar attacks Safeway's use of varying pay scales as evidence that she was not a salaried employee. This attack is without merit.

The FLSA regulations state that an employer "may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salaried basis." 29 C.F.R. § 541.604(a).

Here, if Parmar worked more than forty hours a week, she was paid an hourly rate of $23 for every hour worked beyond forty hours. For example, if she worked forty-six hours, she would receive an extra six hours at a rate of $23 per hour. This is known as "4th Premium" pay under Safeway's pay system. Parmar also received pay under the title "Pharmacy Exception Curre," which was paid out at her full normal hourly rate. These two rates alone do not show that she was paid on an hourly basis. These payments were "additional compensation" made beyond the minimum weekly amount required of her salary and comply with 29 C.F.R. § 541.604(a). This is not a basis on which to dismiss the motion for summary judgment.

### 2. Deductions From Parmar's Salary Do Not Destroy Her Salaried Basis

In its motion for summary judgment, Safeway highlights six instances when Parmar received fewer than 40 hours of regular pay and explains how each deduction is permissible under the FLSA without converting Parmar to an hourly worker. Parmar appears to concede that the deductions were proper under the Department of Labor regulations in every instance except

during her suspension in January 2009. The Court finds the deductions were proper and that Parmar was a salaried employee not entitled to overtime pay.

### a. Pay during the week of June 28, 2008

Parmar's pay stubs reveal that she was paid for only twenty-eight hours during week of ending June 27, 2008. She worked twenty-eight hours and took twelve hours of unpaid leave for one day of work she missed. (Parmar Dep. at 200-01; Dkt. No. 59-1 at 2, 82.) Because she had worked fewer than three months with Safeway, she did not qualify under the Sick Pay Benefits and Use Guidelines, Safeway's bona fide sick pay plan, for paid sick leave. (Dkt. No. 43-1 at 42.) Thus, she could not take paid leave for the twelve hours she did not work. This deduction was permitted under 29 C.F.R. § 541.602(b)(1). Parmar does not challenge this deduction, which the Court finds proper under § 541.602(b)(1).

### b. Pay during the week of August 9, 2008

Parmar was paid for only twenty-four hours of work for the week of August 3-9, 2008, during which she took vacation for two days. Safeway deducted wages for two days pursuant to its leave policy, which only granted new employees accrued vacation after 12 months of service. (Parmar Dep. at 210-11; Dkt. No. 43-1 at 37.) At this point in her employment, she did not have accrued paid vacation. Instead, she took unpaid leave. This deduction is permitted by 29 C.F.R § 541.602(b)(1), which states that "[d]eductions may be made when an exempt employee is absent from work for one or more full days for personal reasons, other than sickness or disability." This deduction does not affect Parmar's salaried status.

### c. Pay during the week of January 17, 2009

During the week of January 11 to 17, 2009, Parmar was suspended for three days, for failing to investigate an employee who gave out a prescription without checking with the

1 pharmacist. Parmar was paid for twelve hours of work, took eight hours of paid leave, and the
2 remainder in unpaid leave for the week. (Parmar Dep. at 234.) The FLSA permits Safeway to
3 make deductions for "unpaid disciplinary suspensions of one or more full days imposed in good
4 faith for infractions of workplace conduct rules." 29 C.F.R. § 541.602(b)(5). This rule applies
5 here.

6       Safeway's pharmacy "best practice procedures" states that the pharmacist must check the
7 original prescriptions and that any error must be reviewed the supervisor or Pharmacy Manager
8 in a timely manner. (Dkt. No. 43-1 at 2, 4.) According to Safeway, Parmar failed to abide by
9 state law and Safeway policy by not immediately conducting an investigation and contacting the
10 patient upon learning of the technician's error. The regional Pharmacy Manager found that
11 Parmar's "lack of concern" and nature of the underlying violation by Parmar's underling
12 warranted a suspension. (Green Decl. ¶ 7.) Parmar admits that she "understood the importance
13 of responding quickly" because of patient safety and state law. (Parmar Dep. at 104, 110.) She
14 also admits she was suspended because her supervisor, "David Green[,] told [her] that [she] did
15 not react as quick as he would have liked and until they investigated the situation further, [she]
16 was on temporary suspension." (Id.) Parmar argues without any support that she did not violate
17 any workplace rule and that the suspension was not justified. (Dkt. No. 67 at 15.) She claims
18 that she was not working the day the incident occurred. However, Safeway's concern was her
19 response upon learning of the incident, regardless of whether she was working on the day in
20 question given that she was the Pharmacy Manager. According to Safeway's safety policy,
21 Parmar had a duty to check any workplace violations concerning the dispensing of medication at
22 the pharmacy she managed. (See Dkt. No. 43-1 at 4.) The undisputed facts show that the
23 suspension was made in good faith in order to investigate a violation of workplace rules. Such a
24

1 deduction in pay does not convert Parmar to a salaried employee, as set forth in 29 C.F.R. § 541.602(b)(5).

        d.     <u>Pay during the weeks of March 7, 2009 and May 23, 2009</u>

During the weeks of March 1 to 7, 2009, and May 17-23, 2009, Parmar was paid for twenty-eight hours of regular wages, eight hours of sick pay and four hours of leave without pay for twelve hour shifts she missed. (Dkt. No. 59-1 at 118.) These reductions in pay were permissible under Safeway's sick pay plan. First, deductions to a salary can be made if made pursuant to a bona fide sick leave plan without converting the employee to an hourly worker. 29 C.F.R. § 541.602(b)(2). During both weeks, Parmar missed one twelve hour shift for which she took eight hours of sick leave pursuant to Safeway's policy that sick leave be taken in eight hour increments. (Worthy Decl. ¶ 9.) This is a permissible sick pay reduction made pursuant to Safeway's bona fide sick pay policy. 29 C.F.R. § 541.602(b)(2).

Second, a salaried employee may take leave without pay and have her weekly income reduced accordingly without converting to an hourly employee. 29 C.F.R. § 541.602(b)(1). Parmar's use of four hours of leave without pay to make up the residual time for each shift missed is permissible without converting her pay to hourly. Parmar does not challenge that this deduction was impermissible. Moreover, the Department of Labor has endorsed this approach, which permits Safeway to deduct less than a full day of pay when the employee misses a full day of work. DOL Opinion Letter No. WHM99-28253-55 (May 26, 1999) (Dkt. No. 57-5 at 2-4). The court finds these reductions do not convert Parmar to an hourly employee.

        e.     <u>Pay during the week of August 29, 2009</u>

In Parmar's final week with Safeway, she received less than her full salary, which is not sufficient to have converted her to an hourly employee. Parmar worked two shifts, a six-hour

1  shift, and a four-and-a-half-hour shift. She was paid for those hours of work and nothing more.

2  (Dkt. No. 59-1 at 79.) This is entirely permissible under federal law, which allows an employer

3  not to pay a salaried employee her full wages in her terminal week of employment. 29 C.F.R. §

4  541.602(b)(6). This is not a basis on which to deny summary judgment.

5        3.    <u>Conclusion</u>

6        Safeway has demonstrated that it paid Parmar a salary, with all deductions made

7  according to the limited exceptions set out in DOL regulations. This evidence is a more than

8  sufficient basis on which the Court GRANTS summary judgment and DISMISSES Parmar's

9  FLSA claim.

10  C.    <u>State Law Claim Overtime Claim</u>

11        The parties agree that the exemptions to overtime pay in the FLSA mirror those under

12  Washington's Minimum Wage Act ("WMWA"). (<u>See</u> Dkt. No. 67 at 18-19.) The Court agrees.

13  The WMWA requires that any exempt employee (professional ones, for example), be paid on a

14  salaried basis. WAC 296-128-532.

15        Parmar does not dispute that she meets the "duties" test under state law as a professional

16  employee. She only contests whether she was paid on a salaried basis. As Safeway has set forth

17  in detail in its motion, with only one slight variation, the WMWA provides the same exceptions

18  to salaried pay as the DOL regulations do under the FLSA. Plaintiff only argues that the

19  exception for pay for safety violations is materially different and that Safeway's suspension was

20  improper. Department of Labor and Industry regulations permit deductions "for disciplinary

21  absences that are imposed for violations of safety rules of major significance. This includes only

22  those relating to the prevention of serious danger to the plant, the public or other employees. . . ."

23  WAC 296-128-532(3)(f). Here, Parmar has admitted that responding quickly to a patient who

24

1  may have been prescribed incorrect medication is important to patient safety. (Parmar Dep. at
2  110.) She also stated that if a technician is "handing out a prescription without getting them
3  checked first" would not only be a concern "[f]or patient safety," but also that "it's a violation of
4  the law." (Parmar Dep. at 104.) The Court is not convinced that the deduction related to
5  Parmar's suspension runs afoul of WAC 296-128-532(3)(f). This is not a basis on which to deny
6  summary judgment.
7      Safeway has demonstrated that Parmar was a salaried, exempt employee under state law.
8  The Court GRANTS summary judgment and DISMISSES Parmar's WMWA overtime claim.

D.   Window of Correction

The FLSA and the WMWA explicitly allow the employer to reimburse the employee for any improper deductions to keep the salaried status of the employee. 29 C.F.R. § 603(c); WAC 296-128-532(5). Isolated instances of deductions also do not create genuine issues of material fact when the deductions were corrected within the window of corrections and the employer indeded to pay its employee on a salaried basis. See Kennedy v. Commonwealth Edison Co., 410 F.3d 365, 372 (7th Cir. 2005). Here, Safeway has reimbursed Parmar for the six instances where she claims to have been paid less than her salary wages. (Parmar Dep. at 287; Dkt. No. 46-3.) All of the evidence shows that Safeway hired Parmar as a salaried individual, paid her pursuant to the policies for pharmacists that classified her as a salaried Pharmacy Manager, and in fact paid her a salaried wage in all but six instances. Safeway's corrective payments provide yet another basis on which to find any deductions did not affect Parmar's salaried status and GRANT summary judgment as to Parmar's FLSA and WMWA overtime claims.

E.   Other Employees

1  Parmar argues that the Court should deny summary judgment based on the payment
2  records of other employees. This argument lacks merit.

3  Parmar relies on DOL a publication in the Federal Register that suggests the Court can
4  look to the payment of other similarly situated co-workers who are employed "in the same job
5  classification working for the same manager responsible for making improper deductions. . . ."
6  Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22180 (Apr. 23, 2004). Parmar
7  provides little basis for the application of this Federal Register notice, but in the interest of
8  rendering a decision on the merits, the Court assumes it applies.

9  Parmar offers declarations from four pharmacists, only two of which were Pharmacy
10 Managers and therefore similarly situated to Parmar. Those Pharmacy Managers, Heather Goh
11 and Hien Tran, submit declarations and some pay stubs claiming that they had their salaries
12 reduced when they worked fewer than forty hours a week, contrary to the fact they were to be
13 salaried employees. (Tran Decl. ¶ 34; Hoh Decl. ¶ 34-34.) Both take issue with Safeway's
14 requirement that sick pay could only be used in eight hour increments, even if the shifts were
15 twelve hours. Yet, as explained above, these sorts of deductions are permissible, as the bona fide
16 sick leave plan only permitted such incremental use of sick leave at the time the leave was taken.
17 Moreover, Mr. Tran's pay records show that he received full salary in all but one week, and that
18 Ms. Goh was paid a full salary in all but three weeks. This is insufficient to raise a genuine issue
19 of material fact. The other two employees who are not similarly situated, Derek Bean and
20 Eugene Erickson, are irrelevant to the overtime claim. This evidence collectively is not
21 sufficient to deny summary judgment.

22  F.  State Meal and Rest Claim

1    Parmar's claim for meal and rest breaks is essentially dependant on her claim for
2 overtime.  The Court agrees with Safeway that the claim must be dismissed.
3    Washington's Department of Labor and Industry regulations requiring meal breaks for
4 covered employees do not apply to Parmar, an exempt employee.  The regulation provides that
5 "[e]mployees shall be allowed a meal period of at least thirty minutes which commences no less
6 than two hours nor more than five hours from the beginning of the shift."  WAC 296-126-092(1).
7 The definition of "employee" specifically excludes professionals, such as Parmar.  Compare
8 WAC 296-126-002(2)(b) with WAC 296-126-092(1).  Plaintiff admits that she is a professional
9 employee.  (Dkt. No. 67 at 18.)  Rather, she argues that she has raised genuine issues of fact as to
10 whether she was a salaried individual.  As the Court sets forth above, Parmar was a salaried
11 pharmacist and is therefore a professional not subject to the meal and rest break rules of the
12 WMWA.  Her claim for meal and rest break pay is DISMISSED.

**Conclusion**

14    The Court GRANTS summary judgment in favor of Safeway.  Safeway has demonstrated
15 that it paid Parmar, a professional employee, on a salaried basis and that every deduction was
16 proper under the FLSA and WMWA.  Moreover, Safeway has paid Parmar for any improper
17 deductions within the window of corrections.  Safeway also had no duty to pay Parmar for meal
18 or rest breaks under the WMWA given that Parmar was an exempt employee.  The Court
19 therefore DISMISSES Parmar's claims with prejudice.  The Court does not address the pending
20 motions for class certification, as decision on Safeway's motion for summary judgment renders
21 them MOOT.
22 \\
23 \\
24

1     The clerk is ordered to provide copies of this order to all counsel.

2     Dated this 14th day of March, 2011.

 

                                                      */s/ Marsha J. Pechman*

                                                      Marsha J. Pechman
                                                      United States District Judge

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT- 16